### PALMER et al. v. DE YONGH.

#### (Circuit Court, S. D. New York. November 15, 1898.)

**1. PATENTS—INFRINGEMENT—PRODUCTS USED IN DIFFERENT ARTS.**

The rule that an inventor is entitled to the benefit of all the uses to which his invention can be put, whether he knew of them or not, cannot operate to bring within a patent structures belonging to a different art, which do not embody the invention claimed, and resemble it only in some of its subordinate features.

**2. SAME—FRINGED VALANCES.**

The Palmer patent, No. 474,997, as to its third claim, which is for a valance formed of woven fabric and having a fringe composed of weft-threads, the article being used for the purposes of ornament, is not infringed by a braid or edging intended as a protection for the bottom of women's skirts, though having a fringe similarly woven, the two articles having entirely different functions and belonging to different arts.

This action is based upon letters patent, No. 474,997, granted to the complainant Palmer, May 17, 1892, for an improvement in woven valances for hammocks. The complainant Feder owns an exclusive license to make, use and sell garment protectors under the patent.

The patentee says:

"My invention relates to an improvement in hammock valances or drapery which when applied to the top edge of the hammock will hang in fulled form. The invention consists in a valance or piece of drapery formed of woven fabric in which the woven selvage edge is shorter than the corresponding portion of the fabric intermediate of the selvage edge and fringe. My invention further consists in a valance or piece of drapery formed of woven fabric, having at one of its edges a fringe formed of weft-threads, which enter into the weaving of the body portion of the hammock."

Again he says:

"When the selvage edge or that portion where the warp has been fed and taken up more slowly is applied straight along the edge of the article or along the support from which the valance is to hang, the portion where the warp has been fed and taken up more rapidly and which has advanced in the weaving faster than the edge will hang in folds, presenting an appearance quite similar to that which would be obtained by gathering the edge, as is commonly done. To form the fringe, the warp is omitted along the central portion of the blank for a distance equal to twice the length of the fringe, so that when cut through the middle the fringe will hang from the opposite edges of the woven fabric at the point where the warp-threads on the opposite sides of the center of the blank are introduced. To increase the body of the fringe I weave more weft-threads, o, across the central portion of the fabric than at the edges—for example, by holding open the sheds of warp from the outer edges of the blank up to a point a short distance from where

the fringe hangs from the edge of the fabric, (up to a point, c, for example, as shown in the accompanying drawings,) while the weft-thread is carried one or more times back and forth, and then proceeding with the weaving. This being repeated at short intervals throughout the weaving will as a matter of course increase the number of weft-threads at the center, and when the blank is cut will provide a thick handsome fringe."

The third claim only is involved. It is as follows:

"(3) A valance formed of woven fabric and having a fringe composed of weft-threads which enter regularly into the weaving of the woven portion of the valance, and of additional weft-threads which engage a portion only of the warp-threads at the fringe edge of the woven portion, substantially as set forth."

The defenses are noninfringement, anticipation, and want of patentability.

W. Laird Goldsborough, for complainants.
Louis C. Raegener, for defendant.

COXE, District Judge. The third claim of the patent has reference to a valance for hammocks, canopies, lambrequins and similar articles where hanging drapery is commonly used. The valance is composed of a woven fabric and a fringe. The fringe is made of the regular weft-threads of the fabric and additional weft-threads which engage a portion only of the warp-threads at the fringe edge of the fabric. The introduction of the additional threads tends, of course, to thicken the fringe. When completed the valance hangs from the hammock body "in full form," or in graceful wavy folds. As described in the specification and shown in the drawing the valance performs no function of any kind, certainly no useful function. It is designed solely for ornament.

The complainant Feder, in whose interests this suit is prosecuted, does not deal in hammocks, furniture or upholstery of any kind. He and the defendant are engaged in selling a braid or edging intended as a protector for women's skirts. This braid is about half an inch in width and is sewed to the bottom of the skirt so that its lower edge, which consists of a thick brush or fringe, extends a short distance below the skirt. It is said that this arrangement is useful and popular, the edging tending to protect the skirt from wear. To the uninitiated it would seem that the brush must act as a dust collector where the filth of the pavement will find a lodgment. In view, however, of the enormous sales reported in the testimony, this view is probably erroneous.

It is unnecessary to decide whether, in view of Exhibit 6 and the "Hensel sample," it involved invention to produce the valance of the claim, for the reason that the court is of the opinion that the claim cannot be broadened to cover the defendant's braid without including these exhibits also.

It is unquestionably true that the inventor of a machine is entitled to the benefit of all the uses to which it can be put whether he knew of them or not. But the defendant must use the invention which the patentee has described and claimed. The rule cannot operate to sweep within the patent structures which do not embody the invention claimed-and resemble only some of its subordinate features. For

instance, one who has patented a new hawser for towing vessels at sea would hardly expect to cover a shoestring even though twisted on the same principle. A manufacturer·of tooth brushes may proceed without fear of molestation from the patentee of an improved street sweeper even though the method of inserting the bristles is alike in both cases and was first adopted by the latter. A patent for a shell for a 13-inch rifle cannot be tortured into covering the head of a lead pencil or the ferrule of a cane. In the present case the claim is expressly limited to a valance and the range of equivalents which the patentee thought might be included by him is plainly indicated in the specification. They all are designed for uses similar to that of a hammock valance. The braid of the defendant is in no sense a valance or the equivalent of a valance. The one is alleged to be useful; the other is known to be ornamental. The sole function of the braid is to protect the skirt and to remain unseen; the sole object of the valance is to be seen and add to the beauty of the hammock.

The legitimate rights of the holder of the patent cannot be invaded by one who protects from wear the bottom of women's skirts. The two fields are wide apart and have nothing in common. If the defendant were sued as a hammock maker and if "Velour Edge Mohair Skirt Binding" were found in the prior art it can be imagined with what contempt it would be denounced by complainants' expert witnesses if offered as an anticipation. They would dismiss it as belonging to a totally different art and having nothing whatever to do with the patented device. It is said that if size, length of fringe and stiffness are to be considered it will be difficult to determine where the dividing line between fringe and brush is located. This may be true in some cases which may be imagined, but here the defendant's braid lies far outside of the debatable territory. The bill is dismissed.